## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

HOWARD DUNCAN,      *
       *
Petitioner,      *
       *
v.      *      Civil No. CCB-19-1465
       *
JACK KAVANAGH, *et al*.      *
       *
Respondents.      *
       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Petitioner Howard Duncan is currently being detained by the U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"). He filed a petition for a writ of habeas corpus, challenging his detention on the basis of his claim that he is a U.S. citizen. (Pet., ECF 1). Respondents Jack Kavanagh, Diane Witte, DHS, Kevin McAleenan, Matthew Albence, and William Barr (collectively "the government") filed a response incorporating a motion to dismiss. (Resp'ts' Mot., ECF 6). Duncan filed an opposition and cross motion for summary judgment, (Pet'r's Mot., ECF 8), which the government opposes. (Resp'ts' Opp'n, ECF 11). No oral argument is necessary. For the reasons explained below, Duncan's habeas petition will be granted in part and denied in part, and the court will grant in part and deny in part both motions.

## FACTUAL AND PROCEDURAL HISTORY

The following facts are not contested. Duncan was born in Nigeria to a Nigerian mother and American father. At the age of six, Duncan and his grandmother moved from Nigeria to the United States to live with Duncan's father. Duncan lived with his father for approximately three months until, in April 1998, Duncan's father was incarcerated. Shortly thereafter, Duncan's

1

grandmother became his guardian. Throughout Duncan's father's incarceration, which lasted from April 1998 until 2011, father and son remained in contact. Duncan visited his father approximately once a month and spoke with him on the phone several times a week. Duncan's father made certain decisions about his son's upbringing and provided some financial support, but Duncan's grandmother was Duncan's primary caretaker for the duration of his childhood.

In 2009, before his eighteenth birthday, Duncan applied for a certificate of citizenship with the United States Citizenship and Immigration Services ("USCIS"). His application was denied in 2010, and Duncan appealed to the Administrative Appeals Office ("AAO"). The AAO affirmed the denial in February 2015. After the AAO's decision, DHS initiated removal proceedings against Duncan pursuant to 8 U.S.C. § 1227(a)(2), which provides that non-U.S. citizens may be subject to deportation if, *inter alia*, they are "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct"; convicted of an aggravated felony; or convicted of certain firearms offenses. 8 U.S.C. §§ 1227(a)(2)(A)(ii)–(iii), (C). Duncan had previously been convicted of several crimes that ICE believed made Duncan deportable: In 2008, Duncan pleaded guilty to robbery with a dangerous weapon, and in 2011, Duncan pleaded guilty to possessing a firearm while under age 21 and making a false statement to a police officer.

Duncan filed a motion to terminate his removal proceedings on the basis that he had derived citizenship from his American father under the Child Citizenship Act of 2000 ("CCA"), 8 U.S.C. §§ 1431–33, and was consequently not deportable under § 1227, which only applies to noncitizens. The CCA provides that a child born outside the U.S. automatically becomes a U.S. citizen if: (1) the child has at least one parent who is a U.S. citizen; (2) the child is under eighteen years old; and (3) the child lives in the U.S. "in the legal and physical custody of the

2

citizen parent pursuant to a lawful admission for permanent residence." 8 U.S.C. § 1431(a). The

immigration judge ("IJ") found that Duncan could not meet the "physical custody" requirement

of the CCA, as during the relevant period—between February 27, 2001, when the CCA was

enacted, and October 17, 2009, when Duncan turned eighteen—Duncan's father was

incarcerated and did not physically care for him.[1] The IJ also rejected Duncan's argument that he

was entitled to relief under the Convention Against Torture ("CAT"), finding that Duncan could

not make the requisite showing that it was more likely than not that, if deported to Nigeria, he

would be tortured. Accordingly, the IJ denied Duncan's motion to terminate removal

proceedings, and later denied his motion to reconsider.

Duncan appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's

decision. Duncan then filed a Petition for Review ("PFR") in the Fourth Circuit. The Fourth

Circuit granted the petition and found that the BIA applied the wrong standard in reviewing the

IJ's findings. *See Duncan v. Barr*, 919 F.3d 209, 217 (4th Cir. 2019). The case was remanded to

the BIA with instructions to apply the correct standards of review to Duncan's CAT and CCA

claims. *Id.* at 214, 217. As of September 5, 2019, Duncan's appeal remains pending at the BIA.[2]

\*     \*     \*

Duncan has been held in ICE custody since July 14, 2015. He is being detained pursuant

to 8 U.S.C. § 1226(c), which provides for mandatory detention of non-U.S. citizens deemed

deportable because of their convictions for certain crimes. Duncan has twice requested that an IJ

review his custody status at a so-called *Lora* bond hearing. In *Lora v. Shanahan*, which is no

longer good law, the Second Circuit held that an individual detained pursuant to § 1226(c) is

---

[1] The IJ did not reach the question of whether Duncan's father retained "legal custody" over him.
[2] As the parties have provided no update regarding the status of the BIA appeal, the court assumes that the appeal remains pending.

3

entitled to a bond hearing before an IJ within six months of his detention, and that unless the government can prove by clear and convincing evidence that the detainee poses a risk of flight or danger to the community, he must be released on bond. 804 F.3d 601, 616 (2d Cir. 2015), *vacated,* 138 S. Ct. 1260 (2018). On February 18, 2016, an IJ in New York, where Duncan was then being held, conducted a bond hearing. On April 4, 2016, the IJ found that the government had carried its burden of showing that Duncan posed a risk of danger to the community and denied Duncan's request for release on bond. Duncan appealed the decision, which was affirmed by the BIA. Duncan's second request for *Lora* review was denied on October 18, 2017.

Duncan is currently being held at the Elizabeth Contract Detention Facility in New Jersey, but at the time Duncan filed his habeas petition, he was being held in solitary confinement at the Howard County Detention Center in Jessup, Maryland. Accordingly, venue is proper in this court pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(1)(B).

Duncan's habeas petition raises four due process claims: (1) unlawful detention of a U.S. citizen; (2) detention of a U.S. citizen for civil immigration purposes in violation of internal ICE policy; (3) prolonged detention without adequate review; and (4) unlawful punitive civil detention, as evidenced by Duncan's placement in solitary confinement. Duncan's fourth claim is now moot, as he is no longer in solitary confinement. (Resp'ts' Mot. at 21; Pet'r's Mot. at 4). Duncan seeks immediate release from custody.

In its motion to dismiss, the government argues that the court is without subject matter jurisdiction to consider Duncan's citizenship claim. But even if the court does have subject matter jurisdiction, the government argues, Duncan is unable to show that he derived U.S. citizenship from his father. The government further argues that Duncan has failed to state a claim of unreasonably prolonged detention. In his cross motion for summary judgment, Duncan argues

that the court does have jurisdiction to hear the citizenship claim. In the alternative, he argues

that any statute that strips the court of jurisdiction to hear Duncan's citizenship claim is

unconstitutional. Duncan asserts that he is entitled to judgment as a matter of law that (1) he is a

U.S. citizen being illegally detained and (2) that his detention has been unreasonably prolonged.

As an alternative to immediate release, Duncan requests, in his motion for summary judgment,

that the court mandate a bond hearing.

## STANDARD OF REVIEW

Motion to Dismiss:

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil

Procedure 12(b)(1) "addresses whether [the plaintiff] has a right to be in the district court at all

and whether the court has the power to hear and dispose of his claim." *Holloway v. Pagan River

Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The plaintiff bears the burden of

establishing subject matter jurisdiction. *Demetres v. East West Const., Inc.*, 776 F.3d 271, 272

(4th Cir. 2015). A defendant may challenge subject matter jurisdiction in two ways: (1) "by

attacking the veracity of the allegations contained in the complaint; or (2) "by contending that,

even assuming that the allegations are true, the complaint fails to set forth facts upon which

jurisdiction is proper." *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). When a

defendant uses the latter method to contest subject matter jurisdiction, the plaintiff "is afforded

the same procedural protection as he would receive under Rule 12(b)(6) consideration." *Kerns v.

United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219

(4th Cir. 1982).[3]

---

[3] The government appears to challenge the court's subject matter jurisdiction to consider Duncan's citizenship claim using the latter method, as the government contends that the court is precluded from even reaching the underlying facts of the claim. (Resp'ts' Mot. at 8–9).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

Motion for Summary Judgment:

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly,

"the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

### I.   Jurisdiction

A threshold issue is whether the court has jurisdiction to consider Duncan's citizenship claim, which is implicit in two of his three remaining due process claims. As the government challenges subject matter jurisdiction, the court will first consider its motion to dismiss the claim.

Under the Immigration and Nationality Act ("INA"), as amended by the REAL ID Act of 2005, "the sole and exclusive means for judicial review of an order of removal" is in "a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5); *see also Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012). The INA further provides that

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law

7

or fact.

8 U.S.C. § 1252(b)(9). By their terms, these two provisions of the INA—§§ 1252(a)(5) and 1252(b)(9)—strip district courts of jurisdiction to hear challenges to orders of removal. *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the PFR process." (emphasis in original) (citation omitted)). Accordingly, "Congress has specifically prohibited the use of habeas corpus petitions as a way of obtaining review of questions arising in removal proceedings." *Johnson v. Whitehead*, 647 F.3d 120, 124 (4th Cir. 2011) (citing 8 U.S.C. § 1252(b)(9)).

Duncan argues that the jurisdiction-stripping provisions of § 1252 do not apply to his petition, as he is not directly challenging an order of removal but is instead "seeking review of the constitutionality of his continued detention as a U.S. citizen." (Pet'r's Mot. at 7). Duncan concedes that his challenge to removal, which is still pending before the BIA, and his constitutional challenge to detention, presented in his habeas petition, are the same: he contests both on the basis of purported U.S. citizenship. Nevertheless, he argues, because § 1252 does not specifically divest the court of jurisdiction to hear a constitutional challenge to detention based on a citizenship claim, the court may hear the claim.

If Duncan's citizenship claim "arises from" his removal proceedings, the court is clearly without jurisdiction to consider it. *See Johnson*, 647 F.3d at 124 ("Petitions for review are the appropriate vehicle for judicial review of legal and factual questions *arising in* removal proceedings." (emphasis added)). But several Courts of Appeals have recognized that "claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *J.E.F.M.*, 837 F.3d at 1032 (citing *Torres–Tristan v. Holder*, 656 F.3d 653, 658 (7th

Cir. 2011), and *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007)). The viability of Duncan's citizenship claim, then, depends on whether it is "independent" of his removal proceedings.

The government argues that Duncan's citizenship claim "is inextricably intertwined with his challenge to removal," and that §§ 1252(a)(5) and 1252(b)(9) consequently strip the court of jurisdiction to hear the claim. (Resp'ts' Mot. at 10). The government points to *Johnson v. Whitehead*, in which the Fourth Circuit affirmed, on § 1252(b)(9) grounds, a district court's dismissal of a habeas petitioner's citizenship claim. 647 F.3d at 124–25. The Fourth Circuit held that "because the issue of Johnson's citizenship arose in his removal proceedings, his petition for review, not his habeas corpus petition, is the proper means of seeking redress." *Id.* at 124. But Duncan argues that *Johnson* is distinguishable. He claims that the Fourth Circuit's § 1252(b)(9) analysis turned on the fact that, by the time the Fourth Circuit decided the case, the petitioner was subject to a final order of removal. (Pet'r's Mot. at 8 (citing *Johnson*, 647 F.3d at 124–25)). Duncan also notes that the petitioner's citizenship claim was in the form of a request for declaratory judgment that he was a U.S. citizen under § 1503(a), and that the district court's dismissal of the claim was for failure to exhaust administrative remedies. (*Id.*).

While in *Johnson*, the petitioner's order of removal was indeed final by the time the Fourth Circuit decided the case, at the time of the district court's ruling, the petitioner—like Duncan—was not yet subject to a final order.[4] Duncan's argument regarding the district court's grounds for dismissing the citizenship claim is more probative of whether *Johnson* controls here. According to the district court opinion in *Johnson*, the petitioner sought "declaratory relief from

---

[4] The *Johnson* petitioner filed his habeas petition on July 18, 2008, *Johnson*, 647 F.3d at 124, and the district court dismissed the petition on May 14, 2009, *Johnson v. Whitehead*, No. CV PJM-08-1872, 2009 WL 10684927, at *5 (D. Md. May 14, 2009). The Fourth Circuit notes that the petitioner appealed the district court's dismissal, but that the Fourth Circuit "held the case in abeyance pending the BIA's decision in Johnson's removal proceedings." *See Johnson*, 647 F.3d at 124.

the Court, claiming he ha[d] established that he attained derivative citizenship through his father's 1973 naturalization." *Johnson v. Whitehead*, No. CV PJM-08-1872, 2009 WL 10684927, at *5 (D. Md. May 14, 2009). The district court found that it did not have authority under § 2241 to grant such relief. *Id.* While the Fourth Circuit discussed § 1252(b)(9) in affirming the dismissal, it does not appear that the district court below relied on the statute in dismissing the citizenship claim. The court thus finds that the Fourth Circuit in *Johnson* did not directly decide whether a habeas claim of unlawful detention, based on an underlying citizenship claim, "arises from" removal proceedings for § 1252(b)(9) purposes. *Accord Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1273 (10th Cir. 2018) (characterizing *Johnson* as "h[olding] that a citizenship claim was barred for failure to exhaust under 8 U.S.C. § 1503," (citing *Johnson*, 647 F.3d at 125)).

Two other Courts of Appeals have directly addressed the jurisdictional question presented in Duncan's habeas petition. In the Tenth Circuit case *Gonzalez-Alarcon v. Macias*, the petitioner, who was subject to a final order of removal, filed a habeas petition seeking release from ICE custody based on his claim to U.S. citizenship. 884 F.3d at 1270. Like Duncan, the petitioner in *Gonzalez-Alarcon* argued that his habeas petition was not subject to the jurisdiction-stripping provisions of § 1252, as he challenged only his detention, not his removal order. *See id.* at 1274. The Tenth Circuit rejected the argument. The *Gonzalez-Alarcon* court reasoned that even if § 1252 permits habeas review of "claims that are independent of a removal order," it bars review of "indirect challenge[s] to the merits of a removal order." *Id.* at 1274–75 (citing cases from the Third, Ninth, and Second Circuits). The *Gonzalez-Alarcon* court held that the petitioner's citizenship claim was such an "indirect challenge." *Id.* at 1275. "Although Gonzalez-Alarcon seeks release from detention, his claim is based on the alleged invalidity of his order of removal." *Id.* Accordingly, the Tenth Circuit found that the petitioner was "seeking 'judicial

review of an order of removal'" in his habeas petition, which is impermissible under § 1252(a)(5).[5]

On similar facts, however, the Ninth Circuit decided differently in *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008). Like Duncan, the petitioner in *Flores-Torres* was not yet subject to a final order of removal, *id.* at 711–12, and sought habeas relief from his § 1226(c) detention on the basis that he was a U.S. citizen, *id.* at 710. The Ninth Circuit held that because § 1252(b)(9) does not provide a "clear statement" foreclosing habeas review of a pre-final order of removal challenge to detention based on a claim to U.S. citizenship, the statute does not strip the district court of jurisdiction to hear the claim. *Id.* at 712 n.6. In so holding, the *Flores-Torres* court implicitly determined that the petitioner's citizenship claim did not "arise from" his removal proceedings. *See id.*

Although *Flores-Torres* has not been expressly overturned, subsequent developments in Ninth Circuit case law call the continued validity of its holding into question. In the 2016 case *J.E.F.M. v. Lynch*, the Ninth Circuit clarified the "distin[ction] between claims that 'arise from' removal proceedings under § 1252(b)(9)—which must be channeled through the PFR process— and claims that are collateral to, or independent of, the removal process." 837 F.3d at 1032. According to the *J.E.F.M.* court, examples of "collateral" or "independent" claims include: (1) a habeas petitioner's claim of unlawful detention, where the petitioner had already been granted asylum and was not subject to removal proceedings, *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006); (2) habeas petitioners' substantive due process claim that the manner in which they were taken into custody violated their right to family integrity, *Aguilar*, 510 F.3d at 19; and (3) a habeas petitioner's ineffective assistance of counsel claim, where the claim arose

---

[5] The Tenth Circuit did not address whether the petitioner's claim was also barred under § 1252(b)(9).

from a lawyer's failure to timely file a PFR in the Court of Appeals such that absent habeas review, the petitioner would have no avenue to pursue his claim, *Singh v. Gonzales*, 499 F.3d 969, 979 (9th Cir. 2007). In contrast to these cases, the Ninth Circuit reasoned that "[w]hen a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)." *J.E.F.M.*, 837 F.3d at 1032 (quoting *Martinez*, 704 F.3d at 623). Whether a claim is independent or an impermissible "indirect challenge" to removal is a case-by-case inquiry that "turn[s] on the substance of the relief that a plaintiff is seeking." *See Martinez*, 704 F.3d at 622 (quoting *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (quotation marks omitted)).

The court is inclined to follow the fact-specific approach the Ninth Circuit counsels in *J.E.F.M.* and *Martinez* to determine whether Duncan's citizenship claim is barred by §§ 1252(a)(5) and 1252(b)(9). The examples of "independent" claims enumerated by the *J.E.F.M.* court were not only attenuated from removal proceedings, but also all involved unusual circumstances that justified departure from a statutory scheme "intended to channel all claims arising from removal proceedings . . . to the federal courts of appeals and bypass the district courts." *See J.E.F.M.*, 837 F.3d at 1033. The court is not persuaded that a citizenship claim existing alongside a removal proceeding is such an unusual circumstance. As evidenced by § 1252(b)(5), which outlines how a Court of Appeals should handle a citizenship claim brought in a PFR, Congress clearly anticipated that claims to U.S. citizenship could arise in removal proceedings. *Accord Gonzalez-Alarcon*, 884 F.3d at 1274 (noting that "some portions of § 1252 specifically apply to individuals who claim to be United States nationals rather than aliens"). Accordingly, the court cannot find that a challenge to detention on the basis of a citizenship claim is "independent" of removal proceedings.

Duncan argues the question of whether his detention violates due process differs from the question of whether he is removable. While technically these *are* separate questions, the court cannot answer the former question without implicating the latter. The relief Duncan requests necessarily requires a finding by this court that he is a U.S. citizen. Such a finding, of course, would mean that Duncan is not removable. A finding of non-removability on the basis of U.S. citizenship, then, is the substance of the relief Duncan seeks both in this proceeding and in his removal proceedings. *See Gonzalez-Alarcon*, 884 F.3d at 1275 ("Although Gonzalez-Alarcon seeks release from detention, his claim is based on the alleged invalidity of his order of removal."). This suggests that Duncan's habeas claim is not independent from his removal proceedings. *See Martinez*, 704 F.3d at 622; *see also Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011) ("We should . . . recognize the lack of jurisdiction where a habeas petition directly implicates the order of removal." (citation and marks omitted)).[6] The court thus finds that Duncan's citizenship claim arises from his removal proceedings; accordingly, §§ 1252(b)(9) and 1252(a)(5) strip the court of jurisdiction to consider it.[7]

The court also finds that the jurisdiction-stripping provisions of §§ 1252(a)(5) and 1252(b)(9) do not impermissibly suspend the writ of habeas corpus. Pursuant to the Suspension

---

[6] In *Singh v. Holder*, the Ninth Circuit characterized the *Flores-Torres* petitioner's challenge to detention as independent from his removal proceedings because "the detention challenge could stand alone." *Singh v. Holder*, 638 F.3d at 1211–12. But the *Flores-Torres* court expressly instructed the district court to review the petitioner's citizenship claim on remand. *See Flores-Torres*, 548 F.3d at 713. Because the outcome of such review directly bears on the removability question, it is difficult to reconcile *Flores-Torres* with later Ninth Circuit decisions.

[7] The court is not persuaded by Duncan's argument that the jurisdiction-stripping provisions of §§ 1252(a)(5) and 1252(b)(9) apply only to habeas petitions challenging final orders of removal. While it is true that a petitioner may not file a PFR until the order of removal is final, *see* 8 U.S.C. § 1252(b)(1), this exhaustion requirement does not mean that the statute's jurisdiction-stripping provisions contain a loophole that allow petitioners to seek habeas review of *non*-final orders of removal. On its face, § 1252(b)(9) does not so limit its reach. *Cf. J.E.F.M.*, 837 F.3d at 1031 (describing the jurisdiction strip of § 1252(b)(9) as "breathtaking in scope and vise-like in grip" (quoting *Aguilar*, 510 F.3d at 9) (quotation marks omitted)). Section 1252(b)(9) bars this court from reviewing "all questions of law or fact" arising from removal proceedings. The fact Duncan's order of removal is not final may have implications for *when* he may pursue his citizenship claim in a PFR, but it does not determine *whether* the district court has jurisdiction to hear the claim. *But see Flores-Torres*, 548 F.3d at 711.

Clause of the U.S. Constitution, "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). Limiting habeas review through jurisdiction-stripping statutes, however, does not violate the Suspension Clause where Congress provides adequate substitute procedures for habeas corpus. *See Boumediene v. Bush*, 553 U.S. 723, 771 (2008). Here, the court's inability to consider Duncan's citizenship claim does not run afoul of the Suspension Clause because Congress has provided an adequate substitute procedure: the PFR process. *See Gonzalez-Alarcon*, 884 F.3d at 1276–77 (citing cases from the Second and Eighth Circuits); *see also Iasu v. Smith*, 511 F.3d 881, 888 (9th Cir. 2007) (REAL ID Act's jurisdiction-stripping provisions do not implicate the Suspension Clause because Congress has provided an adequate substitute for habeas review). Indeed, Duncan states in his habeas petition that if the BIA again affirms the IJ's ruling on his citizenship claim, Duncan will file another PFR to the Fourth Circuit. (Pet. ¶ 71). The court agrees with the Tenth Circuit that the ability to assert a citizenship claim through the PFR process constitutes an adequate substitute to habeas review. *See Gonzalez-Alarcon*, 884 F.3d at 1278. *But see Flores-Torres*, 548 F.3d at 712 n.7 (implying that the PFR process is not an adequate substitute to habeas review of *non-final* orders of removal).

As the court is unable to consider Duncan's citizenship claim, Claims One and Two of Duncan's habeas petition—unlawful detention of a U.S. citizen and detention of a U.S. citizen in violation of internal ICE policy—will be dismissed for lack of subject matter jurisdiction.

## II.     Prolonged Detention Claim

Duncan's remaining due process claim is that his detention pursuant to § 1226(c) has been unreasonably prolonged, and that he should either be immediately released or afforded a

14

bond hearing. The court has jurisdiction to hear this claim. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 839–41 (2018) (habeas challenges to prolonged detention are not barred by § 1252(b)(9)). While the government seeks dismissal of this claim under Rule 12(b)(6), the court will treat both motions as motions for summary judgment. In filing his cross motion, Duncan put the government on notice that he sought judgment as a matter of law that his detention had been unreasonably prolonged. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (district court's conversion of the plaintiff's motion to dismiss into a motion for summary judgment was proper where the plaintiff had "actual notice that the motion could be disposed of as one for summary judgment" and did not file a Rule 56(f) motion arguing that further discovery was necessary). Moreover, in its opposition to Duncan's motion for summary judgment, the government provides materials extrinsic to Duncan's habeas petition to bolster its argument that the length of Duncan's detention has been reasonable. (Resp'ts' Reply & Opp'n at 13, ECF 11; ICE Detention Records, Resp'ts' Reply & Opp'n Ex. 1, ECF 11-1). *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Accordingly, the court will review the prolonged detention claim under Rule 56(a).

Section 1226(c) mandates detention of non-U.S. citizens deemed deportable because of their convictions for certain crimes. 8 U.S.C. § 1226(c); *Jennings*, 138 S. Ct. at 846. This class of noncitizens may be exempt from mandatory detention prior to removal "'*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." *Jennings*, 138 S. Ct. at 846 (quoting § 1226(c)(2)) (emphasis in original). Duncan maintains that as a U.S. citizen, his detention is unlawful, but does not contest that if he *were* a noncitizen, he would be subject to mandatory detention under

the statute. For the purposes of analyzing this claim, the court will assume that Duncan's detention is authorized under § 1226(c), and will only address whether the detention has been unreasonably prolonged.

Section 1226(c) "does not on its face limit the length of the detention it authorizes." *Jennings*, 138 S. Ct. at 846. In fact, the Supreme Court has noted that the statute "makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting § 1226(a)) (emphasis in original).[8] The Supreme Court in *Jennings*, however, did not foreclose the possibility that unreasonably prolonged detention under § 1226(c) may violate due process. *See Jennings*, 138 S. Ct. at 851; *accord Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018); *Obando-Segura v. Sessions ("Obando-Segura I")*, No. CV GLR-17-3190, 2018 WL 4384166, at *5 (D. Md. Sept. 14, 2018).[9] Indeed, before the Supreme Court's decision in *Jennings*, most Courts of Appeals interpreted § 1226(c) as containing an implicit reasonableness limitation on the length of detention. *See Obando-Segura I*, 2018 WL 4384166, at *5 (collecting cases). Post-*Jennings*, many courts continue to hold that in order to satisfy due process, § 1226(c) detention must not be unreasonably prolonged. *See, e.g.*, *Borbot*, 906 F.3d at 278 (*Jennings* did not disturb prior Third Circuit holding that unreasonably prolonged § 1226(c) detention may violate due process (citing *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011)); *Reid v. Donelan*, 390 F. Supp. 3d 201, 215 (D. Mass. 2019) (unreasonably prolonged § 1226(c) detention without a bond hearing violates due process); *Cabral v. Decker*, 331 F. Supp. 3d 255, 259, 262 (S.D.N.Y. 2018) (same); *Mohamed v. Sec'y Dep't of Homeland Sec.*, 376 F. Supp. 3d 950, 957 (D. Minn.

---

[8] In arriving at this interpretation, the Supreme Court in *Jennings* looked to § 1226(a), which authorizes release on bond for noncitizens awaiting a decision on removal "except as provided in subsection (c)." *See Jennings*, 138 S. Ct. at 846.

[9] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

2018) (same).

The government does not contest that unreasonably prolonged § 1226(c) detention, without a bond hearing, may violate due process. (Resp'ts' Mot. at 15–16). Rather, it argues that Duncan's detention has not been unreasonably prolonged. In determining the reasonableness of the length of a petitioner's § 1226(c) detention, courts in this district consider the following factors: (1) the length of time a detainee has been held without a bond hearing; (2) the reason for prolonged detention; (3) whether any impediments exist to final removal, if ordered; (4) whether the detainee's § 1226(c) detention exceeds the time spent incarcerated for the crime that rendered him removable; (5) whether the detainee is being held at a facility "meaningfully different from a penal institution for criminal detention"; and (6) the likely duration of future detention. *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 717 (D. Md. 2016); *Obando-Segura I*, 2018 WL 4384166, at *6.[10]

Duncan has been detained for over four years, and his most recent bond hearing was over two years ago. This length of detention "weighs . . . in his favor as a prolonged and substantial burden on his liberty interest." *See Portillo v. Hott*, 322 F. Supp. 3d 698, 708 (E.D. Va. 2018) (applying a balancing test similar to the one employed in *Jarpa*). In *Demore v. Kim*, the Supreme Court held that detention during removal proceedings is constitutional, but also observed that a six-month period of detention was "somewhat longer than the average" for § 1226(c) detainees. 538 U.S. 510, 530–31 (2003). In *Jarpa*, the court found that the petitioner's ten-month detention without a bond hearing supported a conclusion that the length of detention was unreasonable. *Jarpa*, 211 F. Supp. 3d at 718.[11] And applying similar balancing tests to the one employed in

---

[10] The parties appear to agree that the *Jarpa* factors should govern the court's reasonableness inquiry. (Resp'ts' Mot. at 15–16; Pet'r's Mot. at 20)

[11] The government correctly points out that the *Jarpa* court's conclusion that the petitioner's detention was unreasonably prolonged was driven in part by the fact that it was the government's appeals—not the petitioner's—

*Jarpa*, other courts in this circuit have found that periods of detention shorter than Duncan's support a conclusion that the length of detention is unreasonable. *See Portillo*, 322 F. Supp. 3d at 708 (fourteen-month detention supported conclusion of unreasonableness); *Mauricio-Vasquez v. Crawford*, No. 116CV01422AJTTCB, 2017 WL 1476349, at *4 (E.D. Va. Apr. 24, 2017) (fifteen-month detention supported conclusion of unreasonableness); *Haughton v. Crawford*, No. 116CV634LMBIDD, 2016 WL 5899285, at *9 (E.D. Va. Oct. 7, 2016) (one-plus-year detention supported a conclusion of unreasonableness); *cf. Obando-Segura v. Whitaker ("Obando-Segura II")*, No. CV GLR-17-3190, 2019 WL 423412, at *3 (D. Md. Feb. 1, 2019) (assuming that two-plus-year detention was unreasonable under the *Jarpa* factors). *But see Elsaidy v. Rau*, No. CIV.A. WDQ-10-981, 2010 WL 3222510, at *2 (D. Md. Aug. 16, 2010) (28-month detention was not unreasonably prolonged). Accordingly, the court finds that the first *Jarpa* factor cuts in Duncan's favor.

The import of the second *Jarpa* factor—the reason for the prolonged detention—is less clear. It is undisputed that the length of Duncan's detention has been driven in part by his choice to appeal several adverse rulings during his removal proceedings. The Supreme Court has noted that due process is not necessarily violated when a detainee's choice to appeal an order of removal prolongs his mandatory detention under § 1226(c). *Demore*, 538 U.S. at 530 n.14 (2003). In *Demore*, however, the Court observed that in cases where a § 1226(c) detainee appeals an order of removal, "appeal takes an average of four months, with a median time that is slightly shorter." *Id.* at 529; *accord Rodriguez v. Robbins*, 715 F.3d 1127, 1135 (9th Cir. 2013) ("*Demore*'s holding hinged on the brevity of mandatory detention[.]"). The appeals process here has been considerably longer, and the current delay—Duncan's pending appeal at the BIA, on

that led to prolonged detention. But as the reason for prolonged detention is appropriately considered under the second *Jarpa* factor, the court need not address it in analyzing the first factor.

remand from the Fourth Circuit—is the result of the BIA's initial use of an incorrect standard of review. *See Duncan*, 919 F.3d at 217. While, arguably, the prolonged detention is mostly attributable to Duncan's appeals, "'appeals and petitions for relief are to be expected as a natural part of the process' and an alien cannot be detained indefinitely 'merely because he seeks to explore avenues of relief that the law makes available to him.'" *See Haughton*, 2016 WL 5899285, at *9 (quoting *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003)). Moreover, the government does not argue that Duncan's appeals have been made in bad faith and "do not blame him for exercising his right to raise his claims." (Resp'ts' Reply & Opp'n at 15). The court thus finds that the second *Jarpa* factors weighs in favor of the government, albeit slightly.

With respect to the third factor, the parties agree that no impediments exist to final removal if ordered.[12] The fourth *Jarpa* factor—whether the petitioner's § 1226(c) detention exceeds the time spent incarcerated for the crime that rendered him removable—cuts against Duncan. He admits he was incarcerated for a total of seven years for the criminal convictions that render him removable under § 1226(c).

Under the fifth *Jarpa* factor, the court considers whether the detainee is being held at a facility "meaningfully different from a penal institution for criminal detention." This factor weighs in Duncan's favor. He has spent the entire duration of his § 1226(c) detention in facilities also used to hold criminal offenders. (Pet'r's Mot. at 25; Resp'ts' Mot. at 21). In *Jarpa*, the court suggested that this factor weighs in favor of any § 1226(c) detainee held in a "prison-like facility" who, like Duncan, "has already served his prison sentence for the underlying conviction." *See Jarpa*, 211 F. Supp. 3d at 719. The government makes much of Duncan's disciplinary infractions while in ICE custody, but the fact remains that § 1226(c) detention is not

---

[12] The government states in its motion to dismiss that no impediments to removal exist, which Duncan does not contest in his motion for summary judgment.

intended to be punitive. *See Portillo*, 322 F. Supp. 3d at 706 (noting the distinction between "'nonpunitive' civil detention, which may be justified by special circumstances, and punitive criminal detention, which may only occur after adequate criminal process"). Accordingly, this factor cuts in Duncan's favor.

The final *Jarpa* factor asks this court to consider the likely duration of future detention. While the government correctly notes that Duncan's detention will terminate upon the conclusion of his removal proceedings, (Resp'ts' Mot at 20–21 (citing *Jennings*, 138 S. Ct. at 846)), his continued detention for this unspecified period of time may still violate due process. *Jennings*, 138 S. Ct. at 851 (declining to reach the question of whether unreasonably prolonged § 1226(c) detention violates due process). As Duncan's BIA appeal remains pending, neither the parties nor the court can predict when removal proceedings will conclude. Moreover, in the event of an adverse ruling by the BIA, Duncan has indicated his intention to file a second PFR to the Fourth Circuit, a process which could add several more months to his detention. The court finds that the final *Jarpa* factor weighs in Duncan's favor.

In light of the foregoing, the court finds that the length of Duncan's detention has become unreasonable. This finding does not, however, require the court to order Duncan's immediate release. The court will instead follow the guidance of *Jarpa* and other district courts in this circuit and instruct the government to hold an individualized bond hearing. *See Jarpa*, 211 F. Supp. 3d at 720; *see also Obando-Segura II*, 2019 WL 423412, at *5; *Portillo*, 322 F. Supp. 3d at 709–10; *Haughton*, 2016 WL 5899285, at *10. These courts did not provide a uniform period within which the bond hearing was required to be held, *see Obando-Segura II*, 2019 WL 423412, at *5 (no specified deadline for hearing); *Portillo*, 322 F. Supp. 3d at 709 (ordering "prompt[]" hearing); *Haughton*, 2016 WL 5899285, at *10 (ordering hearing within 30 days); *Jarpa*, 211 F.

Supp. 3d at 725 (ordering hearing within 10 days), but all agreed on the applicable standard of proof. At the hearing, if the government seeks continued detention, it must prove by clear and convincing evidence that the detainee poses a flight risk or would be a danger to the community if released. *Id.*[13] The court believes that the same standard of proof is appropriate here. Accordingly, the government will be instructed to hold, within 30 days, an individualized bond hearing at which they must prove by clear and convincing evidence that Duncan poses a flight risk or would be a danger to the community if released.[14]

## CONCLUSION

For the foregoing reasons, Duncan's habeas petition will be granted in part and denied in part. The government's motion to dismiss Claims One and Two of Duncan's habeas petition for lack of subject matter jurisdiction will be granted, and Duncan's motion for summary judgment on these claims will be denied. Claim Four will be dismissed as moot. As to Claim Three, Duncan's motion for summary judgment will be granted, except as to immediate release; the government's motion to dismiss will be denied; and the court will order that the government conduct an individualized bond hearing within 30 days. A separate order follows.

<u>2/10/20</u>
Date

<u>         </u>
Catherine C. Blake
United States District Judge

---

[13] The parties agree that risk of flight and dangerousness are the relevant considerations. (Resp'ts' Mot. at 22; Pet'r's Mot. at 26).

[14] As Duncan did not request a bond hearing in his habeas petition, but rather suggested it as an alternative form of relief in his motion for summary judgment, the government argues that the court cannot order such a hearing. The court disagrees. In support of its contention that the court lacks authority to order a bond hearing, the government cites only *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997), which states that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint." Duncan, however, does not seek to change the *allegations* of his petition. His motion for summary judgment merely acknowledges that the court may be inclined to grant a lesser form of relief than immediate release from detention. The government cites no authority tending to suggest that this court is without the power to fashion relief it deems necessary to ensure that an individual's prolonged civil detention comports with due process.